Opinion by
Hoffman, J.,
Plaintiff, J. Russell Erode, Inc., brought this action in foreign attachment against its former employee, Richard Van Emburg. Its complaint alleged that Van Emburg overdrew his commissions in 1964, 1965 and 1966, caused personal insurance to be placed in his own behalf at plaintiffs expense, and fraudulently withdrew cash from plaintiff’s cash drawer. Defendant left the employ of plaintiff and moved to New Jersey in 1966.
Defendant and his wife owned real estate in Montgomery County, Pennsylvania, as tenants by the entire-ties. This property was under agreement of sale to Robert K. and Dorothy E. Greaser. On October 11, 1966, the Van Emburgs and the Greasers gathered at the Red Hill Savings and Loan Association to make settlement. Also present, among others, was J. Willard Schoelkopf, attorney for the Van Emburgs. At that time, a deputy sheriff of Montgomery County, ac *127 companied by Stanford S. Hunn, attorney for plaintiff, served the instant writs of foreign attachment on all those present.
In order to complete settlement, counsel for plaintiff and defendant entered into a stipulation which provided, in part:
“And now, this 11th day of October, 1966, it is stipulated and agreed by and between Stanford S. Hunn, Attorney for Plaintiff, and J. Willard Schoelkopf, Attorney for Defendant, as follows: . . .
“2. Proceeds of sale of Magazine Road, Sumneytown, Pennsylvania, premises shall be held in a savings account in Red Hill Savings and Loan Association entitled ‘Stanford S. Hunn and J. Willard Schoelkopf subject to the Order of Court’, to be distributed upon termination of this action in accordance with the Judgment of the Court.”
This stipulation was filed of record on October 14, 1966, and approved by the Honorable Frederick B. Smillie. On that same date, plaintiff filed his complaint and J. Willard Schoelkopf, Esquire, filed a warrant of attorney and entered his appearance on defendant’s behalf.
On November 2, 1966, defendant filed a “petition for release of attached property.” On May 4, 1967, this petition was dismissed by Judge Smillie.
Defendant appealed to our Court under the Act of April 26, 1917, P. L. 102, §1, 12 P.S. §1108. Plaintiff moved to quash the appeal as interlocutory. We ordered that the argument on the motion to quash be heard together with the appeal on the merits.
The above-cited act provides: “In all cases now pending, or which may hereafter be brought, where a writ of foreign attachment has been or shall be dissolved or quashed, or the court has refused or shall refuse to dissolve or quash the same, the party against whom such order is or has been made, or whose inter *128 est is affected thereby, may appeal to the Supreme or to the Superior Court, as in other cases. In the case of a refusal to dissolve or quash, the right to appeal shall be immediate, without waiting for the final judgment in the case.”
By virtue of this statute, an immediate right of appeal is granted from an order refusing to quash a writ of foreign attachment, even though the order appealed from is interlocutory.
Defendant contends that his petition to release attached property is equiválent to a motion to quash a writ of foreign attachment. Plaintiff contends, however, that the petition merely seeks to quash the attachment rather than the writ — a distinction which has been suggested in Bergman v. Straus, 264 Pa. 439, 107 A. 810 (1919). See also 9 Standard Pa. Practice, Ch. 38, §59 at p. 56 (1962).
After noting this distinction, however, the Supreme Court in Bergman concluded that, “It is not necessary, however, to pursue this matter further, for the same re-' suit would be reached if both matters were now reviewable.” Similarly in our case, as the lower court correctly recognized, assuming that defendant’s motion does grant him the right to appeal, there is no basis upon which to release the attached property.
Preliminarily, note should be taken of Pa. R. C. P. No. 1269(b), which provides: “If the defendant is served with the writ or complaint, appears or files a bond or security, the action continues as if commenced by personal service of a summons or complaint.”
Here, the sheriff served the writ personally on defendant, and defendant’s attorney filed his warrant of attorney and entered a general appearance. Accordingly, the quashing of the writ of foreign attachment would have no effect upon the pendency of the action itself which would continue to judgment, jurisdiction over the person of the defendant having been acquired *129 by service and the general appearance of defendant’s attorney. The single question for us to determine is whether the property in escrow should be released immediately.
The lower court concluded that this property should remain subject to the attachment. The court, in the pertinent portion of its opinion, stated as follows: “Defendant maintains that the property included in part two of the Stipulation belongs to him and his wife as tenants by the entireties, and as such is not subject to attachment in a suit against one spouse. That statement is correct but the fact is that defendant and Ms wife,[1] through their attorney voluntarily entered into the Stipulation and severed the tenancy. Defendant and his wife, through their common attorney, and in order to facilitate a real estate settlement severed their tenancy by the entireties. They agreed that the proceeds of the sale be held in escrow until there is a judicial determination of the husband’s liability to his former employer by reason of his conversions. In Pennsylvania, it is axiomatic and needs no citation of authority that a tenancy by the entireties can be severed by agreement of the tenants. Both the husband and wife benefited from the Stipulation because it released funds which they needed. . . .”
We agree with the lower court that the property should not be released at this time. Our conclusion, however, is based on the simple fact that the parties entered into a stipulation under which the funds were to be held in escrow, “to be distributed upon termination of this action in accordance with the Judgment of the Court.” They then submitted this stipulation to *130 the lower court for its approval. It is clear to us that the force of this stipulation binds the property in escrow, regardless of the validity of the attachment itself.
We do not consider the further conclusions of the lower court relating to an implied severance of the tenancy. The stipulation is certainly unclear as to the disposition of these funds if and when judgment against the defendant is obtained. Certainly, question could be raised as to whether the intent of the parties was that plaintiff should obtain all of the escrow money or only one-half of the escrow money after judgment. In our view, neither the pleadings nor the record requires a finding as to the status of the funds in escrow at this time, nor is there sufficient evidence in the record to establish such status. Any implication to the contrary in the opinion of the lower court should be ignored at this time and should be the subject for consideration only if judgment is obtained against defendant.
In summary, personal jurisdiction over the defendant was acquired by reason of personal service and the general appearance of his attorney. Consequently, even if the property was not attachable, its release would not terminate this action. The defendant and his wife, in effect, waived their right to question the propriety of the attachment by entering into a stipulation, subsequently approved by the court, providing that their funds be held in escrow “to be distributed upon termination of this action in accordance with the Judgment of the Court.” On this basis, the court acted correctly in dismissing the petition to release the property from the attachment at this time.
Order affirmed.

 The lower court stated in its opinion that defendant’s attorney declared that he represented both defendant and his wife in entering into the stipulation. Defendant does not, on appeal, suggest otherwise, (footnote ours)