## Intersport, Inc. v. Remi Claeys-Superia

*Howard R. Flayman*, for plaintiff.
*Denis James Lawler*, for defendants.

GUARINO, *J.*, January 4, 1977—This matter comes before the court on petition to dissolve the attachment and dismiss the complaint: Pa.R.C.P. 1032.

On December 31, 1975, plaintiff, a resident of the State of Washington, filed an action in assumpsit against petitioner, Remi Claeys-Superia, a Belgian corporation. The writ and the complaint were on that very day served upon Shipside Packing and Consolidation Inc., garnishee. By answer duly

filed, garnishee indicated that it possessed 37 bicycles belonging to petitioner. On February 27, 1976, a judgment by default was entered in favor of plaintiff and against petitioner in the sum of $10,243.21 for failure to appear and post security as provided by rules governing actions commenced by foreign attachment. Judge Gelfand opened the default judgment and petitioner was allowed to file an answer. In its answer and new matter, petitioner raises the defenses of both lack of jurisdiction over the subject matter and lack of jurisdiction over its person.

I

A petition for dismissal of an action may be filed whenever it appears that the court has no jurisdiction over the subject matter involved in the suit: Pa.R.C.P. 1032(2). Lack of jurisdiction over the subject matter is never waived and may be entertained at any time during the judicial process: Strank v. Mercy Hospital of Johnstown, 376 Pa. 305, 102 A. 2d 170 (1954); Rybak Estate, 424 Pa. 470, 227 A. 2d 883 (1967).

The cause of action is one in assumpsit to recover commissions and expenses. Plaintiff alleges that it placed an order for bicycles with petitioner on the behalf of one of its customers for which commissions were promised and not paid. It is also alleged that, at the instance of petitioner, plaintiff incurred certain expenditures. In its answer, petitioner denies liability and in new matter it avers a written contract between the parties dated March 24, 1972, which specifically provided that "any contestations resulting of this agreement will be subject to the courts of Bruges and interpreted by the law of Belgium." A copy of the written agreement is attached

to petitioner's pleading. In its reply to the new matter, plaintiff alleges that the action upon which it has predicated its right to recover is oral and subsequent to the contract pleaded in the new matter.

These averments, repeated in the petition and answer, go to the merits of the controversy between the parties and depending upon the proof will be a factor in the outcome. They do not, however, determine the question of jurisdiction of this court over the subject matter. See Shaw Electric Co., Inc. v. International Brotherhood Electrical Workers Local Union No. 98, 422 Pa. 211, 220 A. 2d 889 (1966); Upholsterers' International Union of North America v. United Furniture Workers of America, C.I.O., et al., 356 Pa. 469, 52 A. 2d 217 (1947); Plum v. Tampax, 399 Pa. 553, 160 A. 2d 549 (1960). Whether the court has jurisdiction over this action of assumpsit does not depend on the allegations of the parties. In fact, on the issue as presented by the petition and answer, the controlling fact is made up of respondent's denial that there is no choice of forum clause between the parties. In the absence of depositions, only facts specifically admitted by the party opposing the matter are to be considered against him; his denials are taken as true: Pa.R.C.P. 209(b); Philadelphia Gas Heating Co. v. Sanders, 181 Pa. Superior Ct. 510, 124 A. 2d 435 (1956); Wade et al. v. Heisey et al, 243 Pa. Superior Ct. 8, 364 A. 2d 423 (1976); Keil v. Good, 467 Pa. 317, 356 A. 2d 768 (1976).

Jurisdiction over the subject matter is conferred on the court by the sovereign and is to be sought in its decrees and enactments: Potteiger v. Fidelity-Philadelphia Trust Co., 424 Pa. 418, 227 A. 2d 864 (1967). Under the Judiciary Article, the court of common pleas has unlimited original jurisdiction in all cases except as otherwise provided by law:

Pennsylvania Constitution, Article 5, §5. It has jurisdiction over all actions of assumpsit: Pa.R.C.P. 1001 et seq., such as the present controversy between the parties. The fact that the court may not or cannot grant the relief sought is not determinative of whether it has the power to inquire into the case: Drummond v. Drummond, 402 Pa. 534, 167 A. 2d 287 (1961). The fact that the disputed choice of forum clause might prevail in the case and that this court cannot grant relief to plaintiff is the obverse side of the court's judgment which has nothing to do with the power to hear and decide.

I find therefore, that the court has the power to hear and to determine the subject matter in controversy between the parties.

## II

It is not disputed that defendant-petitioner is a nonresident foreign corporation which is not registered, does no business and maintains no office in Pennsylvania. Nor does the action upon which the suit is based arise from any transaction conducted in Pennsylvania. In fact, although of no consequence, plaintiff also is a nonresident, unregistered corporation.[1] Primarily, defendant-petitioner is in Pennsylvania for no other reason than to protect its property seized by a writ issuing out of this court ex parte—without any hearing or opportunity to be heard. Under the Pennsylvania Rules of Civil Procedure, the property of a nonresident prospective-defendant is seized and will not be released until

1. ". . . [B]y virtue of the 'privileges and immunities' clause of §2 of Art. IV of the Constitution, each State . . . [has] a duty to accord the same privilege of protection to citizens of other States that it accords to its own citizens."

the nonresident posts bail: Pa.R.C.P. 1272, or upon successful termination of the action at law or equity which occasioned the seizure in the first instance: Pa.R.C.P. 1251 et seq. Such routine summary-seizure of property of a nonresident without prior judicial approval and without prior notice and opportunity to be heard is violative of due process and the equal protection clause of the Fourteenth Amendment.

"[O]fficial seizures can be constitutionally accomplished only with either 'notice and . . . opportunity for a hearing or other safeguard against mistaken' taking." Jonnet v. Dollar Savings Bank of the City of New York,[2] 530 F. 2d 1123 (3d Cir. 1976).

Thus, seizure in this case was improper and the attachment must be dissolved. Plaintiff claims, however, that even though the attachment be dissolved on constitutional grounds, the action should be permitted to continue since all the prerequisites of "due process" are extant: defendant-petitioner is present within the territorial limits of the court's jurisdiction, it has notice of the claim, opportunity to be heard, and has generally appeared by filing an answer.

It indeed would be anomalous that the process, insufficient to establish in rem jurisdiction over the property which is within the territorial reach of the court's jurisdiction, should be sufficient and be the basis for the exercise of in personam jurisdiction. The due process clause limits the exercise of state judicial power on property, and to an even greater extent on the person. Basically, the underlying

---

2. Jonnet overruled Lebowitz v. Forbes Leasing and Finance Corp., 456 F. 2d 979 (3d Cir. 1972), cert. denied, 409 U.S. 843, rehearing denied, 409 U.S. 1049 (1972).

purpose of foreign attachment is to establish jurisdiction over persons in a convenient forum and restrain the res for eventual payment of the claim. Thus, objection does not comport with constitutional fairness because it provides an unsubstantial protection to prospective nonresident defendants: Jonnet v. Dollar Savings Bank of the City of New York, supra, at 1129. Where, then, the particular procedural device is declared unconstitutional, its aim is also nullified. If it were otherwise, the unconstitutional procedure would retain the legal efficacy which would negate its unconstitutionality—a contradiction which is abhorrent to logic and law.

A court's jurisdiction does not extend beyond the territorial limits of the state that created it. It has no power to pass judgment over persons or property not within its boundaries: Com. ex rel. Graham v. Graham, 367 Pa. 553, 80 A. 2d 829 (1951); Com. ex rel. Lembeck v. Lembeck, 81 Pa. Superior Ct. 305 (1923). When it exercises jurisdiction in rem—over property within its jurisdiction—the decrees affect only the property; the nonresident owner himself is not affected: Mid-City Bank and Trust Co. v. Myers, 343 Pa. 465, 23 A. 2d 420 (1942). Generally, with certain exceptions provided by the long arm statute,[3] not here relevant, the court may acquire jurisdiction over persons present, or domiciled within its territory or who voluntarily submit, and affect them with a personal judgment. A nonresident owner, who comes to protect his property from a rank unlawful seizure, which bore a judicial signet, does not ipso facto submit to the jurisdiction of the court on a cause of action that might have been declared

_____
3. Act of July 2, 1937, P.L. 2747, as amended, 12 P.S. §§331-336.

against him. While the court had potential jurisdiction over the property which a proper process might have perfected, it had no judicial right or basis for exercising any jurisdiction over the nonresident.

The rules of civil procedure which comport with due process pave the way for acquiring personal jurisdiction over a prospective defendant. Jonnet did not declare all of the foreign attachment rules unconstitutional. Only those rules having to do with the ex parte seizure and disposition of the nonresident's property were declared so: 530 F. 2d at 1130. The remainder of the rules remain constitutionally adequate. Pa.R.C.P. 1271 provides the means by which certain defenses peculiar to action commenced by foreign attachment may be raised without subjecting the party to the jurisdiction of the court. "The defense of immunity or exemption . . . and the defense that no property of the defendant was in the possession of the garnishee . . . may be raised by the defendant without thereby subjecting himself to the jurisdiction of the Court: (1) by preliminary objection under 1017(b)(1), or (2) by a petition to open judgment . . ." It is contended that in failing to follow the way prescribed by the rule, and in filing an answer to the complaint instead, defendant-petitioner entered a general appearance, and waived his right to challenge the jurisdiction over his person, citing Pa.R.C.P. 1269; Vant v. Gish, 412 Pa. 359, 194 A. 2d 522 (1963); J. Russell Brode Inc. v. Van Emburg, 212 Pa. Superior Ct. 125, 239 A. 2d 847 (1968).

While the essential import of Rule 1271 is that the challenges to the jurisdiction (1017(b)(1)) can be made in limine, the rule does not imply that a party failing to do so is precluded from challenging the jurisdiction. To the contrary, the phrase "may be raised" itself implies that the rule is precatory. This

rule governs the procedure following commencement of an action by foreign attachment and applies to those defenses endemic to a foreign attachment action. When not otherwise provided by the foreign attachment rules, the procedure is in accordance with the rules relating to the appropriate action at law or equity: Pa.R.C.P. 1251. Thus, in the case at bar, which is essentially an action at law in assumpsit, the rules of assumpsit complement those in foreign attachment. In an assumpsit action "personal jurisdiction" or the "form of service of a writ" may be questioned by preliminary objection: Pa.R.C.P. 1017(b)(1); but, a party does not waive the right to challenge jurisdiction if he asserts the challenge in his answer or reply: Pa.R.C.P. 1032. Thus, where as in this case, petitioner filed an answer and new matter wherein he specifically included the challenge he has not waived it: Id.

Vant v. Gish, supra, cited by plaintiff in support of its argument that petitioner has waived the right to challenge the jurisdiction because he has made answer is exactly to the contrary. Vant specifically holds that in a case commenced by foreign attachment, a defendant, in addition to raising the objection provided for in Rule 1271, may also raise other defenses without having been deemed to have made a general appearance: id. at 369; Goodrich-Amram, 1017(b)-7. Nor is the Russell Brode, supra, case supportive of plaintiff's proposition. That case holds that a suit commenced by foreign attachment does not abate against a defendant who has been personally served with the writ and makes a general appearance. The decision is directly based on Pa.R.C.P. 1269(b) which provides that: "If the defendant is served with the writ or complaint,

[and] appears . . . the action continues as if commenced by personal service . . ." In the Russell Brode case, defendant had submitted to the jurisdiction by filing a stipulation with court approval that the res "'be distributed upon termination of [the] action in accordance with the Judgment of the Court.'" Id. at 212 Pa. Superior Ct. 129, 239 A. 2d 849. Petitioner in our case was never personally served with a writ or complaint and specifically did not submit to the jurisdiction of the court. Indeed, from the time he first learned that his property had been seized, in the motion to open the default judgment and again in its new matter, it challenged the court's jurisdiction.

Where petitioner filed a petition to open a judgment based upon the court's lack of jurisdiction over his person and property, and the judgment is opened, defendant-petitioner does not submit to the jurisdiction of the court on the cause of action where in his answer it specifically challenges jurisdiction of the court.

Accordingly, we enter the following

ORDER

And now, January 4, 1977, upon petition of defendant Remi Claeys-Superia, it is hereby ordered, adjudged and decreed that the attachment issued by plaintiff and directed to garnishee, Shipside Packing & Consolidation Inc. is hereby dissolved and that the complaint of plaintiff is dismissed for lack of jurisdiction over the person of defendant.